**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JERMAINE CARTER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action |
| v. | No. 17-cv-00182 (JBS-AMD) |
| WARDEN DAVE OWENS, CITY OF CAMDEN, STATE OF NEW JERSEY, MAYOR OF CITY OF CAMDEN, BOARD OF FREEHOLDERS OF CAMDEN COUNTY, COUNTY OF CAMDEN, and CAMDEN COUNTY CORRECTIONAL FACILITY, | **OPINION** |
| Defendants. | |

APPEARANCES

Jermaine Carter, Plaintiff Pro Se
856344B
Bayside State Prison
4293 Route 47
Leesburg, NJ 08327

**SIMANDLE, District Judge:**

## I.   INTRODUCTION

1.   Plaintiff Jermaine Carter seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against Warden Dave Owens ("Warden" or "Owens"), City of Camden ("City"), State of New Jersey ("State"), the Mayor of City of Camden ("Mayor"), Board of Freeholders of Camden County ("BOF"), County of Camden ("County"), and Camden Correctional Facility ("CCF") for

allegedly unconstitutional conditions of confinement. Complaint, Docket Entry 1 at § 4(b)-(c) and at 7 - 8.[1]

## II.  <u>STANDARD OF REVIEW</u>

2.    28 U.S.C. § 1915(e)(2) requires courts to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis*. Courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and 42 U.S.C. § 1997e because Plaintiff is a prisoner proceeding *in forma pauperis* and is filing a claim about the conditions of his confinement.

3.    For the reasons set forth below, the Court will: (1) dismiss the Complaint with prejudice as to claims made against CCCF; (2) dismiss the Complaint with prejudice as to claims made against State of New Jersey; and (3) dismiss the Complaint

---

[1] Subsequent to the Complaint, Plaintiff filed a Notice of Motion to Amend Complaint "so as to name the defendant whose name and identity where [*sic*] previously unknown to the plaintiff in the complaint. The name of the defendant is the City of Camden of the State of New Jersey. Also naming David Owens[,] Warden of the Camden County Correctional Facility." Docket Entry 3 at 1. Given that the City and Owens are already named as defendants in the original Complaint (Docket Entry 1 at 1), the claims against these defendants are, in fact, screened pursuant to 28 U.S.C. § 1915(e)(2) in this Opinion and accompanying Order.

without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

III. **DISCUSSION**

    A. **Claims Against CCCF: Dismissed With Prejudice**

    4.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983[2] for alleged violations of Plaintiff's constitutional rights. In order to set forth a *prima facie* case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

    5.    Generally, for purposes of actions under § 1983, "[t]he term 'persons' includes local and state officers acting under color of state law." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)).[3] To

---

[2] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

[3] "Person" is not strictly limited to individuals who are state and local government employees, however. For example, municipalities and other local government units, such as counties, also are considered "persons" for purposes of § 1983. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).

say that a person was "acting under color of state law" means that the defendant in a § 1983 action "exercised power [that the defendant] possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Generally, then, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

6. Because the Complaint has not sufficiently alleged that a "person" deprived Plaintiff of a federal right, the Complaint does not meet the standards necessary to set forth a *prima facie* case under § 1983. In the Complaint, Plaintiff seeks monetary damages from CCCF for allegedly unconstitutional conditions of confinement. The CCCF, however, is not a "person" within the meaning of § 1983; therefore, the claims against it must be dismissed with prejudice. *See Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983.") (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Given that the claims against the CCCF must be dismissed with

prejudice, the claims may not proceed and Plaintiff may not name the CCCF as a defendant.

7.    Plaintiff may be able to amend the Complaint to name a person or persons who were personally involved in the alleged unconstitutional conditions of confinement, however. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days of the date that this Opinion and accompanying Order are entered on the docket.

## B. Claims Against The State: Dismissed With Prejudice

8.    Plaintiff's claims against the State of New Jersey (Complaint, Docket Entry 1 at 1) must be dismissed based on the Eleventh Amendment to the United States Constitution, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Plaintiff may not bring a suit against the State in federal court unless Congress has expressly abrogated New Jersey's sovereign immunity or the State consents to being sued in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Here, Congress did not expressly abrogate sovereign immunity when it passed § 1983, *see id.*, and there is no indication New Jersey has consented to Plaintiff's

5

suit. The claims against the State of New Jersey must be dismissed with prejudice.

   C. **Claims Against The County, The City and The BOF: Dismissed Without Prejudice**

   9.   As to claims against the County, the City, and the BOF, Plaintiff has not pled sufficient facts to impose liability on these defendants. "There is no *respondeat superior* theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents. Rather, a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). *See also Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer"). Plaintiff must plead facts showing that the relevant Camden County policy-makers are "responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).[4]

---

[4] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Government custom can be demonstrated by showing that a given course of conduct, although not specifically endorsed or

In other words, Plaintiff must set forth facts supporting an inference that Camden County itself was the "moving force" behind an alleged constitutional violation. *Monell*, 436 U.S. at 689. Plaintiff has not done so.

10.   Plaintiff contends that the County, the City, and the BOF "were responsible for the overcrowding of the [CCCF] facility and failed to resolve the matter and the violations it caused" (Complaint, § 4(c)), along with various other alleged jail conditions and due process violations. Complaint, Docket Entry 1 at 6 – 7. The Complaint states that the County and the City were "responsible for the overcrowding of the facility [and] for not resolving the issues of overcrowding and the subsequent problems that [were] attributed to it." *Id*. at 7.

11.   Plaintiff has not pled the necessary facts to impose liability on the County, the City, or the BOF because even accepting the statements in Plaintiff's Complaint as true for screening purposes only, there is not enough factual support for the Court to infer that Plaintiff has been the victim of any constitutional violations with respect to overcrowded conditions of confinement, various other jail conditions, or due process violations, as explained in greater detail below in this

---

authorized by law, is so well-settled and permanent as virtually to constitute law." *Kirkland v. DiLeo*, 581 F. App'x 111, 118 (3d Cir. 2014) (internal quotation marks and citations omitted) (alteration in original).

Opinion. In other words, the Complaint does not set forth facts supporting an inference that Camden County itself was the "moving force" behind any alleged constitutional violation. *Monell*, 436 U.S. at 689.

12.  As Plaintiff may be able to amend his Complaint to address the deficiencies noted by the Court, the Court shall grant Plaintiff leave to amend the Complaint within 30 days of the date that this Opinion and accompanying Order are entered on the docket.[5]

**D. Claims Against the Warden and the Mayor: Dismissed Without Prejudice**

13.  With respect to Owens, Plaintiff contends that the Warden "was directly in charge of the daily operations of the facility, fully participated in the conditions being complained about [and] is responsible . . . for the overcrowding of the facility [and] continuing acceptance of inmates knowing that there was an existing problem of where to house inmates." Complaint at § 4(b) and at 7.

14.  With respect to the Mayor, Plaintiff contends that this defendant was "responsible for all of the City of Camden

---

[5] To the extend the Plaintiff seeks to impose liability upon the City of Camden, as distinct from the County of Camden, for conditions at CCCF, the Court is unaware of any responsibility the City has for conditions at the County facility.  Plaintiff should not name the City as a defendant in any Amended Complaint unless he can allege a basis for the City's liability grounded in fact.

affairs [and was] responsible for the overcrowding of the facility and failed to resolve the matter and the violations it caused." Complaint § 4(c).

15.   Even accepting the statements in Plaintiff's Complaint as true for screening purposes only, and as explained in greater detail below in this Opinion, there is not enough factual support for the Court to infer that any constitutional violations have occurred in the first instance with respect to: overcrowded conditions of confinement, other jail conditions referenced in the Complaint, alleged retaliation, or alleged due process violations. Therefore, Plaintiff has failed to state a claim against Owens and the Mayor because the Complaint does "[not] allege[] any personal involvement by [them] in any constitutional violation – a fatal flaw, since 'liability in a § 1983 suit cannot be predicated solely on the operation of *respondeat superior*.'" *Baker v. Flagg*, 439 F. App'x 82, 84 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "'Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' Thus, [plaintiff] failed to state a claim against [these individuals]." *Bob v. Kuo*, 387 F. App'x 134, 136 (3d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009)). *Accord Hussein v. State of New*

*Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) ("The claims against the remaining defendants were properly dismissed *sua sponte* for failure to state a claim.  [The] Mayor [of Jersey City] cannot be sued under § 1983 on the basis of a *respondeat superior* theory. *See Rode*, 845 F.2d at 1207[-1208] ['A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Compare Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (civil rights complaint adequate where it states time, place, persons responsible)'])").

16.   In other words, Plaintiff here has not offered facts suggesting that the Warden or the Mayor, through their own individual actions, have violated the Constitution. *Bob*, 387 F. App'x at 136. Thus, Plaintiff has failed to state a claim against Owens and the Mayor.[6]

---

[6] Further, the Court is again unaware of any basis for claiming that the Mayor of the City of Camden is somehow responsible for conditions in the Camden County Jail; therefore, Plaintiff should not name the Mayor in any Amended Complaint unless he has a factual and legal basis for doing so.

17.   Accordingly, Plaintiff's claims against the Warden and the Mayor will be dismissed without prejudice.

**E. Conditions Of Confinement Claims: Dismissed Without Prejudice**

          1)  Overcrowded Conditions of Confinement

18.   Plaintiff alleges that he experienced "forceful conditions of overcrowding" while incarcerated at CCCF, including but not limited to "being forced to sleep on the floor and under the bed" (hereinafter referred to as Plaintiff's "Overcrowding Claim"). Complaint § III(C).

19.   As explained below, the Court will dismiss the Overcrowding Claim without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii). The Complaint does not allege sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915. The Court will accept as true for screening purposes only the statements in Plaintiff's Complaint, but there is not enough factual support for the Court to infer that an unconstitutional overcrowding violation has occurred.

20.   To survive *sua sponte* screening for failure to state a claim[7], the Complaint must allege "sufficient factual matter" to

---

[7] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017)

show that the claim is facially plausible. *Fowler v. UPMS
Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308
n.3 (3d Cir. 2014). "[A] pleading that offers 'labels or
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.'" *Ashcroft*, 556 U.S. at 678
(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555
(2007)). Moreover, while *pro se* pleadings are liberally
construed, "*pro se* litigants still must allege sufficient facts
in their complaints to support a claim." *Mala v. Crown Bay
Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation
omitted) (emphasis added).

     21.  A complaint must plead sufficient facts to support a
reasonable inference that a constitutional violation has
occurred in order to survive this Court's review under § 1915.

     22.  However, with respect to the alleged facts giving rise
to Plaintiff's claims, the Complaint states that he was confined

---

(citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir.
2012)); *Allah*, 229 F.3d at 223; *Mitchell v. Beard*, 492 F. App'x
230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1));
*Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008)
(discussing 28 U.S.C. § 1915A(b)).

at the CCCF from "January 3, 2016 to September 30, 2016" and suffered "cruel and unusual punishment due to the forceful conditions of overcrowding." Complaint, Docket Entry 1 at 6. Plaintiff sets forth several alleged constitutional violations he experienced while incarcerated, including "quadruple-triple bunking" and "overcrowding." *Id*. at 6-7.[8]

23.  The Complaint alleges that Plaintiff suffered "a great deal of pain and suffering" and "cruel and unusual punishment" during these events. Complaint, Docket Entry 1 at 6.

24.  Plaintiff seeks: "general damages, punitive damages[,] [and] monetary damages in the amount of [$]1,000,000,000," along with "an injunction[9] that the defendants stop their actions of overcrowding the [CCCF]." *Id*. at 8.

---

[8] Plaintiff's Notice of Motion to Amend Complaint, filed subsequent to the Complaint, refers to "new facts contained in the plaintiff's amended complaint attached here to [*sic*] [that] are necessary to enable plaintiff here to prove his case." Docket Entry 3 at 2. The Notice did not append any such purported amended complaint. *See* Docket Entry 3 at 1 – 4. *See also* Proof of Service to Notice of Motion to Amend Complaint: "I, Jermaine, Carter, caused to have mailed the following documents of[:] Notice to Amend Complaint; Notice for Pro Bono Attorney[;] And Affidavit of Poverty. To the United States District Court, District of New Jersey. On February 07, 2017 via regular mail." Docket Entry 3 at 3. As of the date of this Opinion, the only filing by Plaintiff subsequent to the Notice of Motion to Amend Complaint is his Application to Proceed In Forma Pauperis. Docket Entry 4.
[9] The Court advises Plaintiff that he is one of thousands of members of a certified class in the case on this court's docket entitled, *Dittimus-Bey v. Camden County Correctional Facility*, Civil No. 05-cv-0063 (JBS), which is a class action case. The class plaintiffs are all persons confined at the CCCF, as either

25.   Construing the Complaint as seeking to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 for alleged prison overcrowding, any such purported claims must be dismissed because the Complaint does not set forth sufficient factual support for the Court to infer that a constitutional violation of overcrowding has occurred.

26.   The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981) (holding double-celling by

---

pretrial detainees or convicted prisoners, at any time from January 6, 2005, until the present time.  The class of plaintiffs seek injunctive and declaratory relief about unconstitutional conditions of confinement at the CCCF involving overcrowding. That class action does not involve money damages for individuals. A proposed final settlement of that case, which describes the settlement in detail, was preliminarily approved on February 22, 2017. At present, various measures already undertaken in the Second and Third Consent Decrees under court approval have reduced the jail population to fewer prisoners than the intended design capacity for the jail. This has greatly reduced or eliminated triple and quadruple bunking in two-person cells, as explained in the proposed Sixth and Final Consent Decree, which would continue those requirements under court supervision for two more years. According to the Notice to all class members that was approved in the *Dittimus-Bey* case on February 22, 2017, any class member had the opportunity to object to the proposed settlement by filing an objection in the *Dittimus-Bey* case before April 24, 2017. No objections were filed. Final approval is pending, and if approved, Plaintiff and other class members will be barred from seeking injunctive or declaratory relief for the period of time from January 6, 2005, until the date of final approval, but the settlement does not bar any individual class member from seeking money damages in an individual case.

itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*") (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them") (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) (quoting *Bell*, 441 U.S. at 542)). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

27.   Plaintiff may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine privations and hardship over an extended period of time, and

that were excessive in relation to their purposes. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days of the date that this Opinion and accompanying Order are entered on the docket.[10]

28.  Plaintiff is further advised that any amended complaint must plead specific facts regarding the overcrowded conditions of confinement. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

29.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id*. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended

---

[10] The amended complaint shall be subject to screening prior to service.

complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and accompanying Order.

> 2) Jail Conditions Claims

30.   Besides the Overcrowding Claim, Plaintiff also complains about these conditions of confinement: (a) lack of "suitable conditions to use the toilet"; (b) "lack of ventilation"; (c) "eating in a confined cell on the floor"; (d) "being subjected to unsanitary conditions"; and (e) lack of "access to the pod unit's DayRoom Space" (hereinafter collectively referred to as "Jail Conditions Claims"). Complaint, Docket Entry 1 at 6-7 ("At the time of this cruel and unusual punishment, I had been subjected to . . .").

31.   Convicted prisoners are protected from "cruel and unusual punishments" by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337 (1981).

32.   "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment prohibits punishment inconsistent with "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Conditions of prison confinement violate the Eighth Amendment

17

only if they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). As the Supreme Court stated in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989): "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.,* food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment..."

33.   Claims for Eighth Amendment violation have both an objective and subjective component.

34.   In *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), the Supreme Court held that to establish an Eighth Amendment violation, an inmate must allege both: (a) an objective element

18

-- that the deprivation was sufficiently serious; and (b) a subjective element -- that a prison official acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference to plaintiff's health or safety. *See also Farmer*, 511 U.S. at 834. *Accord Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). "To satisfy the first prong of this test, the condition of confinement at issue must deprive the prisoner of the minimum of civilized life's basic necessities -- food, water, shelter. The state of mind necessary for a viable claim under the second prong is 'deliberate indifference' to inmate health or safety, a standard that requires actual knowledge or awareness of the risk of the condition of confinement to the prisoner." *Ridgeway v. Guyton*, 663 F. App'x 203, 205 (3d Cir. 2016) (internal citations omitted).

35.  Applying this framework, the Court will address the individual Jail Conditions Claims in turn. For the reasons set forth below, each of these Claims will be dismissed without prejudice.

### a. Toilet Conditions Claim

36.  Plaintiff alleges that he did not have "suitable conditions to use the toilet" (hereinafter referred to as "Toilet Conditions Claim"). Complaint, Docket Entry 1 at 6.

37.  This vague and non-specific allegation does not satisfy either prong of the Eighth Amendment test.

38.  In fact, Plaintiff's allegation about his Toilet Conditions Claim does not, in the first instance, provide a reasonably sufficient basis for this Court to infer the type, duration or severity of the "conditions" from which the Toilet Claim arises.

39.  Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") requires pleadings to contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and demand for the relief sought . . . ." Fed. R. Civ. P. 8(a)(1)-(3). While *pro se* complaints are construed liberally and are held to less stringent standards than formal pleadings drafted by lawyers (*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), *pro se* litigants nevertheless must still allege facts, taken as true, to suggest the required elements of the claims asserted. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008); *McNeil v. United States*, 508 U.S. 106, 113 (1993)("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

40.   Here, the Court cannot discern from Plaintiff's non-specific reference to "suitable conditions to use the toilet" (Complaint, Docket Entry 1 at 6) the nature of the claim Plaintiff intends to pursue against any particular defendant as to this alleged condition of confinement. For example, the Complaint is silent regarding: the characteristics or aspects of the Toilet Conditions that made them "[un]suitable" (*id*.); whether the toilet at issue was the unit inside Plaintiff's cell at CCCF or was part of the restroom facility for the CCCF prison population generally; whether Plaintiff sustained any injury from the alleged conditions; whether alternate restroom facilities were made available to Plaintiff to account for the allegedly "[un]suitable" unit of which he complains; and the reason for the unsuitable nature of the toilet referred to in the Complaint (*e.g.*, plumbing maintenance schedule, plumbing malfunction, etc.). Without facts such as these, Plaintiff has provided the Court no basis to reasonably infer that the Toilet Condition was sufficiently serious or that any particular defendant acted with deliberate indifference with respect to Plaintiff's health and safety as to the Toilet Condition.

41.  For example, in *Ridgeway*, the complaint suggested that the toilet would occasionally overflow. The court affirmed dismissal:

> "[Plaintiff] impl[ied] at most that the toilet
> would overflow from time to time. He did not at
> any point allege that the overflowing was
> continuous or, in any event, make allegations
> sufficient to plausibly suggest that he was forced
> to 'live in squalor.' He did not raise any health
> concerns or health problems arising from the
> broken toilet. His allegations, therefore, fell
> far short of those that courts have held to
> satisfy the requirement of an 'objectively,
> sufficiently serious' injury. Although we do not
> doubt that the problem with the toilet was
> unpleasant, we must conclude, under the totality
> of the circumstances, that Ridgeway's complaint
> failed to allege the objectively, 'sufficiently
> serious' conditions of confinement necessary for
> a viable Eighth Amendment claim."

*Ridgeway*, 663 F. App'x at 205-06 (internal citations omitted).

*See also Junne v. Atlantic City Med. Ctr.*, No. 07-5262, 2008 WL

343557, at *10 (D.N.J. Feb. 4, 2008) (dismissing plaintiff's

conditions of confinement claim where plaintiff alleged that the

jail's lack of a private bathroom and his "need to use the

toilet in the presence of a total stranger caused substantial

embarrassment," because "plaintiff's embarrassment ensuing from

having another person in the cell while plaintiff uses the

toilet cannot qualify as a violation of plaintiff's

constitutional rights"). "There is, of course, a *de minimis*

level of imposition with which the Constitution is not

concerned." *Bell*, 441 U.S. 539 n. 21. Plaintiff has failed to

present facts demonstrating that the Toilet Conditions here

passed this threshold.

42.  The Complaint does not set forth sufficient factual matter to show that the Toilet Conditions Claim is facially plausible. *Fowler*, 578 F.3d at 210. The Toilet Conditions Claim will be dismissed without prejudice, with leave to amend.

b. Ventilation Conditions

43.  Plaintiff claims to have been "subjected to lack of ventilation" (hereinafter referred to as "Ventilation Conditions Claim"). Complaint, Docket Entry 1 at 7.

44.  As noted above, the relevant Eighth Amendment inquiry is "whether the alleged deprivation is 'sufficiently serious' and whether the inmate has been deprived of the 'minimal civilized measure of life's necessities.' *Farmer*, 511 U.S. at 834 (citing *Rhodes*, 452 U.S. at 347). [Plaintiff] must demonstrate that 'he is incarcerated under conditions posing a substantial risk of serious harm' and that prison officials demonstrated 'deliberate indifference' to his health or safety. *Id*. However, only 'extreme deprivations' are sufficient to sufficiently allege claims for conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)." *Riley v. DeCarlo*, 532 F. App'x 23, 26 (3d Cir. 2013).

45.  The Eighth Amendment affords a right to adequate ventilation and to be free from extreme hot and cold temperatures. *Wilson v. Cook Cnty. Bd. of Comm'rs*, 878 F. Supp. 1163, 1169 (N.D. Ill. 1995). However, the Constitution does not

23

guarantee the right to be free from all discomfort while incarcerated, *Rhodes*, 452 U.S. at 349, and so "the Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure to inadequate cooling and ventilation. '[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional.'" *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (internal citations omitted). "Inadequate 'ventilation and air flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of the penitentiary.' *Hoptowit v. Spellman,* 753 F.2d 779, 784 (9th Cir. 1985)." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996).

46.   However, as noted above, Fed. R. Civ. P. 8 requires litigants to allege facts, taken as true, to suggest the required elements of the claims asserted.

47.   Here, Plaintiff's generalized allegation of being "subjected to lack of ventilation" (Complaint, Docket Entry 1 at 6-7) does not provide any facts whatsoever from which to infer that the Ventilation Conditions were sufficiently serious or that any particular defendant acted with deliberate indifference with respect to Plaintiff's health and safety as to ventilation.

48.   For example, Plaintiff has offered no facts to demonstrate that the "lack of ventilation" was sufficiently

serious, such as: temperature range inside his cell in the
pertinent time period; dates when Plaintiff allegedly
experienced inadequate ventilation; whether the alleged lack of
ventilation caused conditions that were too hot or were too
cold; outside air temperatures and humidity levels experienced
in CCCF's geographic location in New Jersey during the pertinent
time period; the ambient temperature in Plaintiff's CCCF cell in
that period; whether Plaintiff suffered ventilation-related
health complications; whether, and when, he made grievances to
CCCF staff regarding the ventilation; and whether he required or
requested medications to deal with any medical problems
sustained as a result of the ventilation. (The foregoing
examples are merely illustrative but not exhaustive or
exclusive.) While ventilation at CCCF may have been less than
ideal, Plaintiff has not offered any facts from which it can be
inferred that it was unconstitutional.

    49.   Furthermore, Plaintiff alleges no facts suggesting
that any defendants actually knew of and disregarded any
excessive risk to Plaintiff's safety from the alleged
Ventilation Conditions. As with the objective component,
Plaintiff therefore also has not satisfied the subjective prong
of the Eighth Amendment for his claim.

    50.   Accordingly, Plaintiff's Ventilation Conditions Claim
shall be dismissed without prejudice, with leave to amend.

c. DayRoom Access Claim

51.   Plaintiff contends that he did "not have access to the pod unit's DayRoom Space" (hereinafter referred to as "DayRoom Claim"). Complaint, Docket Entry 1 at 6. Plaintiff does not describe the contents, purpose, layout, or size of the DayRoom, so the Court will construe the term to refer to common area space in CCCF accessible to the general inmate population.

52.   Plaintiff does not offer any facts regarding the purpose or contents of the DayRoom Space, such as, for example: exercise, recreation, television, reading material, board games, eating, writing surfaces and materials, or sleeping. Plaintiff also does not describe how lack of access to the DayRoom impacted him.

53.   Under these circumstances, the Court finds that Plaintiff has not satisfied the objective prong of the Eighth Amendment. While this Court recognizes that the denial of exercise or recreation may result in a constitutional violation, *Peterkin v. Jeffes*, 855 F.2d 1021, 1031–33 (3d Cir. 1988), the vagaries of Plaintiff's allegation about "access to DayRoom Space" (Complaint, Docket Entry 1 at 6) do not, without any facts, afford a reasonable basis for this Court to construe the type of claim Plaintiff seeks to assert. Without additional details about the nature of his Dayroom Claim, Plaintiff has not demonstrated that denial of access to it was sufficiently

26

serious to deprive him of the minimal civilized measure of life's necessities. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

54.  Moreover, even if Plaintiff were to have met the objective prong of an Eighth Amendment claim, Plaintiff would still fail to satisfy the subjective prong for the DayRoom Claim. The subjective prong requires a plaintiff to show that a defendant exhibited a "deliberate indifference" to the plaintiff's health or safety. Plaintiff has not submitted any evidence showing that any defendants possessed such a state of mind. Indeed, he has not named specific defendants allegedly liable under the DayRoom Claim.

55.  Accordingly, the DayRoom Claim will be dismissed without prejudice, with leave to amend.

### d. Eating and Unsanitary Conditions

56.  Plaintiff's remaining Jail Conditions Claims also are insufficient to set forth a *prima facie* case under § 1983. Plaintiff offers vague and cursory allegations that he was "subjected to unsanitary conditions" and "subject to eating in a confined cell on the floor." Complaint, Docket Entry 1 at 6, 7. These allegations essentially complain of an "inconvenient and uncomfortable situation"; however, "'the Constitution does not mandate comfortable prisons.'" *Carson*, 488 F. App'x at 560 (citing *Rhodes*, 452 U.S. at 349); *see also*, *Marnin v. Pinto*, 463

27

F.2d 583, 584 (3d Cir. 1972) ("blanket statements alleging bad food and miserable living conditions in the prison" were "naked statements [that do not] ordinarily merit Federal court intervention").

57.   As these claims do not allege "sufficient factual matter" to show that the claim is facially plausible, *Fowler*, 578 F.3d at 210, but instead offer only "labels or conclusions," *Ashcroft*, 556 U.S. at 678, they shall be dismissed without prejudice for failure to state a claim.

### F. Retaliation Claims: Dismissed Without Prejudice

58.   Plaintiff states that "if I choose to opposed [*sic*] to the conditions of being forced to quadruple-triple bunking I would be retaliated against by the correctional staff. By way of being written up [referred to hereinafter as "Write-Up"], placed in solitary confinement [referred to hereinafter as "Isolation"] and the loss of privileges [referred to hereinafter as "Privilege Loss"]. Complaint, Docket Entry 1 at 7.

59.   The Court construes Plaintiff's contention that he was given Write-Up, Isolation, and Privilege Loss "if [he] cho[]se to oppose[]. . . quadruple-triple bunking conditions" (*id.*) as a claim that prison officials retaliated against him for exercise of his First Amendment right to free speech (referred to hereinafter as "Retaliation Claim"). For the reasons set forth below, this claim will be dismissed without prejudice.

1) <u>Retaliation For Exercise Of First Amendment Right</u>
<u>Of Free Speech</u>

60.  The Complaint here does not set forth sufficient
factual support for the Court to infer that prison officials
retaliated against Plaintiff for exercise of his First Amendment
constitutional right of free speech.

61.  "'The First Amendment right to free speech includes
not only the affirmative right to speak, but also the right to
be free from retaliation by a public official for the exercise
of that right . . . Retaliation, though it is not expressly
referred to in the Constitution, is nonetheless actionable
because retaliatory actions may tend to chill individuals'
exercise of constitutional rights.'" *Bartley v. Taylor*, 25 F.
Supp.2d 521 (M.D. Pa. 2014) (internal citations omitted). "[T]he
key question in determining whether a cognizable First Amendment
claim has been stated is whether 'the alleged retaliatory
conduct was sufficient to deter a person of ordinary firmness
from exercising his First Amendment rights.'" *Thomas v.
Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2013). "This same
test has been applied in the prison context." *Allah v.
Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).

62.  To set forth a prima facie claim of retaliation
against prison officials, a plaintiff must demonstrate: (1) the
conduct that led to the alleged retaliation was constitutionally

protected; (2) the plaintiff suffered some adverse action at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him, or, more specifically, that plaintiff's constitutionally protected conduct was "a substantial or motivating factor" in the decision to take retaliatory action. The plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001). To state a claim for retaliatory treatment, "a complaint need only 'allege a chronology of events from which retaliation may be inferred.'" *Bendy v. Ocean Cnty. Jail*, 341 F. App'x 799, 802 (3d Cir. 2009) (internal citation omitted). "Because motivation is almost never subject to proof by direct evidence, [plaintiffs] [usually] rely on circumstantial evidence to prove a retaliatory motive. [Plaintiffs] can satisfy [t]his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

    63.  Once the prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of

the evidence that it "would have made the same decision absent
the protected conduct for reasons reasonably related to a
legitimate penological interest." *Rauser*, 241 F.3d at 334. A
retaliation claim fails whenever the defendant shows that there
is "some evidence" to support the discipline citation. *Nifas v.
Beard*, 374 F. App'x 241, 244 (3d Cir. 2010).

64.    As to the first element of a retaliation claim --
*i.e.*, constitutionally protected conduct -- prisoner speech
opposing conditions of confinement (*see* Complaint, Docket Entry
1 at 7) is constitutionally protected activity. *Winn v. Dep't of
Corr.*, 340 F. App'x 757, (3d Cir. 2009) ("'[T]he filing of
prison grievances is a constitutionally protected activity'")
(internal citation omitted); *Pell v. Procunier*, 417 U.S. 817,
822 (1974) (criticism of prison operation is conduct protected
by the First Amendment, at least to the extent that the conduct
is not contrary to legitimate penological concerns). This Court
accepts as true for screening purposes only the statement in the
Complaint that the Retaliation Claim is based upon Plaintiff's
expressions of speech to CCCF personnel that "opposed the
conditions of being forced to quadruple-triple-bunk" (Complaint,
Docket Entry 1 at 7) (hereinafter referred to as "Protected
Speech").

65.    As to the second element of a retaliation claim --
*i.e.*, "adverse action" as judged under an objective standard --

31

"whether a prisoner-plaintiff has met [the adverse action] prong of his or her retaliation claim will depend on the facts of the particular case." *Allah*, 229 F.2d at 225. Prisoners may be required to tolerate more than average citizens before an action is considered adverse. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). In order to constitute "adverse action," the circumstances must evidence some form of deterrent effect on the inmate. For example, "whether placement in the SHU [solitary housing unit] was 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights' is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Rauser*, 241 F.3d at 333).

66.  Here, Plaintiff has not alleged any facts at all about the nature of his confinement in Isolation. For example, the Complaint is silent with respect to whether Isolation involved: reduced access to phone calls, visitation loss, reduced access to the commissary, reduced access to recreation, or the number of hours per week that Plaintiff was afforded access outside Isolation. (The foregoing example list is illustrative but not exhaustive regarding facts that might demonstrate whether the nature of Plaintiff's Isolation was sufficient to deter a person of ordinary firmness from exercising his right to free speech.) There is a similar omission of facts in the Complaint regarding

32

whether the Write-Up and Privilege Loss constituted adverse actions for purposes of constitutional retaliation analysis. *Rauser*, 241 F.3d at 333. The Complaint does not, for example, indicate: the content of the Write-Up; what, if any, repercussions the Write-Up had upon Plaintiff; or which defendant was responsible for documenting the Write-Up; which "privileges" (Complaint, Docket Entry 1 at 7) were "lost" (*id.*) (such as phone, commissary, recreation, prison job, law library access, or something else); and whether and for how long Plaintiff had purportedly possessed the "Privileges" prior to expression of the Protected Speech. In short, Plaintiff does not offer any facts demonstrating that one or more particular defendants placed him in "solitary confinement" (Complaint, Docket Entry 1 at 7) specifically *in retaliation for* his complaining or filing of grievances about overcrowded conditions of confinement, as opposed to other motivations, such as: maintaining the safety and security of Plaintiff or other inmates; caring for Plaintiff's health; or preventing disobedience and disorder.

67. As to the third element of a retaliation claim -- *i.e.*, a causal link between the exercise of his constitutional free speech rights and the adverse action taken against him -- Plaintiff offers no facts suggesting that his constitutionally protected conduct was "a substantial or motivating factor" in

prison officials' decision to impose Isolation, Privilege Loss and Write-Up. *Rauser*, 241 F.3d at 333. For example, Plaintiff does not offer a timeline regarding when his speech about overcrowded conditions occurred in relation to prison officials' placement of him into Isolation, their Write-Up of Plaintiff, and his Privilege Loss. Such temporal facts are necessary to demonstrate, *inter alia*, that: (a) there was a causal link between Plaintiff's expression of free speech and the Isolation, Write-Up, and Privilege Loss; and (b) that the alleged retaliatory events were not causally related to, for example, disorderly behavioral incidents involving Plaintiff that required (i) transfer to different custody status for a legitimate penological purpose such as safety and security (*i.e.*, Isolation) or (ii) documentation of the event for prison records (*i.e.*, Write-Up). The Complaint is also silent with respect to: the content, frequency and means by which Plaintiff communicated his "oppos[ition] to quadruple-triple bunking" (Complaint, Docket Entry 1 at 7); whether he had elected to communicate his displeasure by verbal or physical means that compromised the safety and security of himself, other detainees, or prison officials; whether other inmates were present at the time of the alleged overcrowding complaints; the persons to whom Plaintiff made his complaints; whether such persons were purportedly involved in the decision to place him in solitary

34

confinement; and the amount of time that lapsed between Plaintiff's expression of overcrowding complaints and his placement into solitary confinement.

68. In sum, conclusory allegations that Plaintiff "would" be placed in Isolation "if [he] cho[]se to oppose[] the [overcrowded] conditions" (Complaint, Docket Entry 1 at 7) are insufficient to state a claim for retaliation against Plaintiff on account of his exercise of his First Amendment right to free speech. He has not offered facts: (a) about the conditions of the Isolation, Privilege Loss and Write-Up to suggest that these alleged acts of retaliation constituted adverse actions sufficient to deter a person of ordinary firmness from exercising his constitutional rights; or (b) about the causal relationship, if any, between the alleged retaliatory acts and Plaintiff's exercise of free speech, thereby failing to provide a basis from which this Court could infer that Plaintiff's constitutionally protected conduct was a substantial or motivating factor in prison officials' decision to impose Isolation, Write-Up, and Privilege Loss. Therefore, Plaintiff's Retaliation Claim will be dismissed without prejudice.

G. **Fourteenth Amendment Due Process Claim: Dismissed Without Prejudice**

    1) Fourteenth Amendment

69. Construing Plaintiff's Isolation contentions to allege not only retaliatory conduct but also conduct in violation of his Fourteenth Amendment right to due process of law (hereinafter referred to as "Due Process Claim"), the Complaint fails to set forth a cognizable claim.

70. The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV. A person is entitled to Due Process of law when a government action deprives him of life, liberty, or property. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). To analyze Plaintiff's Due Process Claim, the first step is to decide whether he was deprived of a liberty or property interest protected by Due Process. *Fuentes v. Shevin*, 407 U.S. 67, 84 (1972). If not, it is not necessary to consider what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). As averred, Plaintiff would be entitled to Due Process only if he had a protected liberty interest in avoiding being "placed in solitary confinement." Complaint, Docket Entry 1 at 7.

71.  Liberty interests protected by the Due Process Clause may arise under the Constitution itself or may be created by state statutes or regulations. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999).

a. *Constitutional liberty interest*

72.  There is no inmate liberty interest in avoiding segregated confinement arising by force of the Due Process Clause itself. *Hewitt v. Helms*, 459 U.S. 460, 466-67 & n.4 (1983) (rejecting inmates' claim of a right to remain in the general population as protected by the Due Process Clause). "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact" and "standing alone[,] [the Clause] confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin*, 515 U.S. at 478, 480 (citing *Hewitt*, 459 U.S. at 468). *See also Allah*, 229 F.3d at 224 ("*Sandin* instructs that placement in administrative confinement will generally not create a liberty interest").

73.  Accordingly, Plaintiff has no constitutional liberty interest, arising exclusively from the Due Process Clause, in being free from "solitary confinement" (Complaint, Docket Entry 1 at 7).

37

b. *State-created liberty interest analysis: Atypical and significant hardship*

74.   In the case of prison inmates, the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), concluded that state-created liberty interests could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest, the Court considered the following two factors: the amount of time the prisoner was placed into disciplinary segregation; and whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

75.   Applying these legal benchmarks, courts have held, for example, that disciplinary proceedings which simply result in sanctions of disciplinary segregation for six months or even more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to a substantive due process claims. *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (7 months disciplinary confinement).

38

76.  Here, the Complaint does not indicate: the time duration of the solitary detention; the physical conditions of Plaintiff's cell; Plaintiff's means of personal hygiene during that solitary detention; opportunities for physical exercise or recreation; the frequency of his social interaction with other inmates and/or his environmental stimulation during that time; or the stated reason given by prison officials as to why he was confined to a solitary cell. Plaintiff has not offered any facts to demonstrate "foul [or] inhuman conditions of confinement" (*Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992)) during the period of isolated detention. The Complaint fails to suggest that the difference in the conditions of Plaintiff's confinement in a solitary cell amounted to an "atypical and significant hardship" as compared to conditions he experienced in the general inmate population at CCCF.

77.  Plaintiff therefore has not alleged a protected, state-created liberty interest.

78.  In sum, neither the Due Process Clause itself nor any state-created interest afford Plaintiff a protected liberty interest that would entitle him to remaining in the general prison population and outside solitary confinement. Thus, given that Plaintiff had no protected liberty interest to avoid segregated confinement, he had no Fourteenth Amendment right to Due Process of law which could have been violated by the

Isolation. This Court, therefore, is constrained to dismiss the Due Process Claim without prejudice for failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

79.   For the reasons stated above, the Complaint is: (a) dismissed with prejudice as to the CCCF; (b) dismissed with prejudice as to the State; and (c) dismissed without prejudice for failure to state a claim.

80.   As the Complaint is being dismissed, Plaintiff's request for pro bono counsel (*see* Motion to Appoint Pro Bono Counsel, Docket Entry 2) is denied at this time. *See Tabron v. Grace* , 6 F.3d 147, 155 (3d Cir. 1993) (requiring claim to have "some merit in fact and law" before appointing pro bono counsel). Plaintiff may request the appointment of counsel again in the event he files an amended complaint.

81.   An appropriate order follows.


<u>__July 20, 2017__</u>                     <u>__s/ Jerome B. Simandle__</u>
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge